# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JSM MANAGEMENT, INC.,**<br>**An Illinois corporation,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **No. 18-cv-2154** |
| | ) | |
| **BRICKSTREET MUTUAL**<br>**INSURANCE COMPANY, a Mutual**<br>**Company,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MONROE GUARANTY**<br>**INSURANCE COMPANY, a member**<br>**Of the FCCI INSURANCE GROUP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on a motion for summary

judgment (d/e 130) on several of the Defendants' common

affirmative defenses filed by Plaintiff JSM Management, Inc.

("JSM"). Also before the Court is a cross-motion for summary

judgment (d/e 133) filed by Defendants Monroe Guaranty

Insurance Company and FCCI Insurance Company (together,

"FCCI").  Because the Court finds that a genuine issue of material

fact exists with respect to the timeliness of several of JSM's claims,

but that JSM is entitled to summary judgment with respect to the

Defendants' exhaustion, waiver, laches, estoppel, and ratification

defenses, JSM's motion (d/e 130) is GRANTED IN PART AND

DENIED IN PART, and FCCI's cross-motion for summary judgment

is DENIED.

## I. BACKGROUND

On May 1, 2018, JSM filed this lawsuit in Illinois state court

alleging breach of contract (Counts I and III) and violations of 215

ILCS 5/462b (Counts II and IV).  See Complaint (d/e 1).   A Count

V, which alleged negligence against a defendant who has been

dismissed pursuant to an agreement with JSM, was also present in

the initial Complaint but has since been dismissed.  See Partial

Judgment (d/e 97).

JSM filed its summary judgment motion (d/e 130) on

December 23, 2019, requesting summary judgment with respect to

several of the affirmative defenses asserted by FCCI and

BrickStreet Mutual Insurance Company (collectively, the "Carriers")—namely, the Carriers' second affirmative defense, which consists of the assertion that JSM filed suit after the end of applicable statutory and/or contractual limitation periods; the Carriers' third affirmative defense, which consists of the assertion that JSM's claims are barred by the equitable doctrines of waiver, estoppel, laches, and ratification; and the Carriers' fourth affirmative defense, which consists of the assertion that JSM's claims are barred due to JSM's failure to exhaust its administrative remedies.  See JSM MSJ (d/e 30); FCCI Answer (d/e 61), at 14.  FCCI filed a Response (d/e 132) opposing JSM's motion on January 13, 2019 and filed a cross-motion for summary judgment (d/e 133) seeking dismissal of Counts III and IV on the basis of its exhaustion and limitation period affirmative defenses on the same day.  Also on January 13, 2019, Defendant BrickStreet Mutual Insurance Company (BrickStreet) filed its own Response (d/e 134) in opposition to JSM's summary judgment motion (d/e 130), which Response largely "adopts and incorporates" the arguments advanced in FCCI's Response (d/e 132).  BrickStreet has not moved for summary judgment with

respect to Counts I and II, which allege breach of contract and violation of 215 ILCS 5/462b, respectively.

## II. FACTS

Plaintiff JSM is a property management company with its headquarters in Champaign, Illinois.  See Notice of Removal (d/e 1), at 2. Defendants FCCI and BrickStreet are insurance companies based in Indiana and West Virginia, respectively.  See id.  Between 2008 and 2010, JSM bought three workers' compensation insurance policies from FCCI: the 2008–2009 Policy, the 2009–2010 Policy, and the 2010-2011 Policy.  See FCCI MSJ (d/e 133), at 2.  Between 2011 and 2014, JSM bought four workers' compensation insurance policies from BrickStreet: the 2011–2012 Policy, the 2012–2013 Policy, the 2013–2014 Policy, and the 2014-2015 Policy.  See BrickStreet Response (d/e 134), at 4–5; Second Amended Complaint (d/e 57), at 5.  Each of these policies provided that the amount paid by JSM in exchange for coverage (the "final premium") would be determined using employee classifications promulgated by the National Council on Compensation Insurance ("NCCI").  See FCCI MSJ (d/e 133), at

7–8; Second Amended Complaint (d/e 57), at 5–6. In May, 2016, JSM's director of accounting Deanne Kuester was told by JSM's new insurance agent that JSM had been overcharged for workers' compensation insurance because the Carriers had been applying incorrect NCCI classification codes to certain JSM employees.  See BrickStreet Response (d/e 134), at 4.  Prior to 2016, JSM was not aware that its insurers had assigned incorrect classifications to some of its employees.  See FCCI Response (d/e 132), at 2.

JSM claims that FCCI and BrickStreet both treated employees whose workers' compensation insurance should have been relatively inexpensive as if they were doing kinds of work that result in relatively higher insurance premiums.  See Second Amended Complaint (d/e 57), at 3–4; JSM MSJ (d/e 130), at 3. For example, JSM claims that the NCCI code that should have been applied to the carpenters in its employ was 9015, which applies to "property management company employees who perform routine maintenance and repairs," but that FCCI and BrickStreet used alternative codes that are properly applied only to carpenters engaged in the more dangerous work of constructing or framing buildings.  See Second Amended Complaint (d/e 57), at 3–4.

### III. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties.  A corporation is a citizen of every state where it is incorporated and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  JSM is incorporated and has its principal place of business in Illinois and is therefore a citizen of Illinois for diversity purposes.  <u>See</u> Notice of Removal (d/e 1), at 2.  Monroe Guaranty Insurance Company is incorporated and has its principal place of business in Indiana, while BrickStreet is incorporated and has its principal place of business in West Virginia.  <u>See id.</u>  FCCI is incorporated and has its principal place of business in Florida.  Therefore, complete diversity exists.

The Court also finds that the amount in controversy exceeds $75,000 exclusive of interest and costs based on the information provided in the Notice of Removal.  <u>See</u> Notice of Removal (d/e 1), at 2.  Therefore, the Court has jurisdiction.

### IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The movant bears the initial responsibility of informing the court of

the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of a genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

genuine dispute of material fact exists if a reasonable trier of fact

could find in favor of the nonmoving party.  Carrol. v. Lynch, 698

F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for

summary judgment, the court must consider the facts in the light

most favorable to the nonmoving party, drawing all reasonable

inferences in the nonmoving party's favor.  Egan Marine Corp. v.

Great Am. Ins. Co. of New York, 665 F.3d 800, 811 (7th Cir. 2011).

## V. ANALYSIS

**A.   The Carriers' Limitation Period Arguments Fail, but a Factual Dispute Exists that Prevents Summary Judgment on JSM's Pre-2013 Statutory Claims**

The Carriers' second affirmative defense concerns the

statutory and/or contractual limitation periods applicable to JSM's

claims.  One of JSM's remaining claims—for damages resulting

from alleged violations of 215 ILCS 5/462b by Brickstreet with

respect to the 2014–2015 Policy—is concededly timely.  See

Brickstreet Response (d/e 134), at 7.  The Carriers assert that all
of JSM's other remaining claims—for breaches of contract and
violations of 215 ILCS 5/462b arising from misclassifications of
JSM employees by the Carriers between 2008 and 2013—are
untimely.  The Carriers advance three arguments in support of this
assertion: that the five-year statute of limitations provided by 735
ILCS 5/13–205 should apply to JSM's breach of contract claims as
well as its statutory claims; that the limitation period imposed by
735 ILCS 5/13–205 began to run when the allegedly incorrect
classification codes were applied to calculate the final premium on
each Policy; and that the parties contractually agreed to a
shortened three-year limitation period, which replaces the five-
and/or ten-year statutory periods.[1]  The Court holds that the
parties have not agreed to a shortened contractual limitation
period, and that the statutory limitation period applicable to JSM's
breach of contract claims is ten years.  However, because the
factual question of when JSM "should have known" of its injury for
discovery rule purposes has not yet been resolved, the Court also

---

[1] FCCI relies first on its discovery rule argument and offers its contractual argument "in the
alternative," while BrickStreet relies primarily on the contractual argument.  See FCCI
Response (d/e 32), at 6; BrickStreet Response (d/e 134), at 6–7.

holds that a genuine dispute of material fact exists concerning the date on which JSM's claims accrued.  Both JSM's and FCCI's requests for summary judgment on the issue of the Carriers' second affirmative defense are denied.

### (1)  The Parties Have Not Agreed to a Contractual Limitation Period for Filing Suit

The Carriers argue that the "Audit" section of the Policies constitutes an enforceable agreement to a "shortened contractual limitation period" that replaces the otherwise-applicable statutory limitation period with a period of three years.  See FCCI Response (d/e 132), at 6 (quoting Country Preferred Ins. Co. v. Whitehead, 979 N.E.2d 35 (2012).

In Illinois, parties to a contract may "agree to a shortened contractual limitation period to replace a statute of limitations," but "[i]n the absence of specific and clear provisions limiting the period within which suits must be filed, the 10-year statute of limitations for actions on written contracts is applicable to actions by insureds against their insurers based on insurance policies." Country Preferred, 979 N.E.2d at 43.  Here, the contractual term

on which the Carriers rely—the "Audit" section—is present in each

of the Policies at issue and provides as follows:

> You will let us examine and audit all your
> records that relate to this policy. These records
> include ledgers, journals, registers, vouchers,
> contracts, tax reports, payroll and
> disbursement records, and programs for
> storing and retrieving data. We may conduct
> the audits during regular business hours
> during the policy period and within three years
> after the policy period ends. Information
> developed by audit will be used to determine
> final premium.

Brickstreet Policy (d/e 134 exh. 1), at 2.

The plain language of this provision appears to govern the

time period during which an insurer can "conduct . . . audits,"

rather than the limitation period for filing a lawsuit based on the

policy.  See LM Ins. Corp. v. All-Ply Roofing Co., No. CV 14-4723,

2019 WL 366554, at *6 (D.N.J. Jan. 30, 2019) (observing that

identical policy language "address[ed] only the time during which

Plaintiffs have audit rights," rather than "limit[ing] Plaintiffs'

ability to bring suit").  However, the Carriers cite a 2011 case from

the District of Connecticut, where the court held that an identical

"Audit" section contained "express contract language [that limited]

plaintiff's time to seek a claim" to three years.  Resinall Corp. v.

Employers Ins. Co. of Wausau, No. 3-09-CV-1326 WWE, 2011 WL
873308, at *4 (D. Conn. Feb. 18, 2011); see FCCI Response (d/e
132), at 6–7; Brickstreet Response (d/e 134), at 6.

But the he Carriers' reliance on Resinall is misplaced.  While
the contractual provision discussed in Resinall is identical to the
"Audit" section at issue in this case, the Connecticut state law
governing contractual limitation periods differs from the Illinois
law that applies here.  The court in Resinall refers to the "right[]"
conferred on insurers by Connecticut state law to "provide express
contract language limiting plaintiff's time to seek a claim."
Resinall Corp., 2011 WL 873308, at *4; see Voris v. Middlesex
Mut. Assur. Co., 297 Conn. 589, 604–06 (2010) (explaining that
Connecticut statute of limitations merely "establishes a default
rule," and discussing historical development of Connecticut
common law governing limitation periods in insurance contracts).

Illinois, by contrast, requires "specific and clear provisions
limiting the period within which suits must be filed" in order to
abridge the limitation period applicable to actions on written
contracts.  Country Preferred, 979 N.E.2d at 43.  This standard is
less conducive to the creation of contractual limitation periods

than the standard applied by the court in <u>Resinall</u>.  In the absence of any specific and clear agreement to the contrary, the applicable limitation periods for JSM's claims are the periods imposed by Illinois statutes.

### (2)  JSM's Breach of Contract Claims are Timely

According to JSM, the applicable limitation period for its breach of contract claims, Counts I and III, is set at ten years by 735 ILCS 5/13–206, while the general five-year Illinois statute of limitations set forth in 735 ILCS 5/13–205 applies to the statutory claims in Counts II and IV.  <u>See</u> Combined Reply (d/e 138), at 6–7. The Carriers argue that the general five-year statute of limitations should apply to all of JSM's claims.

Section III.A of FCCI's Response brief (d/e 132) interweaves two unrelated legal arguments.  FCCI's first argument is that JSM's breach of contract claims are "redundant" because they are based on the same allegedly wrongful acts that give rise to JSM's statutory claims, that JSM's inclusion of the breach of contract claims is an attempt to circumvent the five-year statute of limitations by "artful pleading," and that the statutory and breach of contract claims should therefore be "considered one and the

same and subject to the same statute of limitations." FCCI

Response (d/e 132), at 4. FCCI's second argument is that the

existing common law dealing with misclassification of employees

has been "supplanted" by 215 ILCS 5/462b, and that in light of

this JSM's breach of contract claims themselves have somehow

been "supplanted." See id. at 5. In the Reply (d/e 138) filed by

FCCI in support of its summary judgment cross-motion, FCCI

offers a "clarification" of its timeliness argument that includes the

first argument but not the second, but since BrickStreet

incorporated the supplantation argument into its response along

with FCCI's other arguments and has not retracted it, see

BrickStreet Response (d/e 134), at 6–7, the Court addresses it as

well as the "artful pleading" argument.

### (a) JSM's Breach of Contract Claims Are Not "Supplanted" by Existence of Relevant Statute

The "supplantation" doctrine referenced by the Carriers

applies when there is "general and comprehensive legislation"

enacted for the purpose of changing the common law, as opposed

to "simple, straightforward codification" of the common law. In re

C.B.L., 309 Ill. App. 3d 888, 890 (1999). 215 ILCS 5/462b is, by

its terms, "intended to codify existing law and practice"—in other words, it is a straightforward codification of existing common and statutory law, precisely the sort of change that cannot supplant the common law.  FCCI nevertheless asserts that accepted canons of statutory interpretation require the final sentence of § 462b ("This Section is intended to codify existing law and practice") to have some substantive effect on existing law and practice.  See FCCI Response (d/e 132), at 5.  However, a statutory provision that clarifies and condenses an existing legal framework without changing its substance is not surplusage.  Nor is a clause stating the purpose of a statute or statutory provision superfluous.  See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978).  Furthermore, even if "codify" were read to mean "change," FCCI offers no explanation of why any change to the existing substantive law of NCCI classification must necessarily result in the dismissal of JSM's breach of contract claims.

### (b)  735 ILCS 5/13–206's Ten-Year Limitation Period Applies to JSM's Breach of Contract Claims

Under Illinois law, "[t]he determination of the applicable statute of limitations is determined by the type of injury at issue,

irrespective of the pleader's designation of the nature of the action." <u>Armstrong v. Guigler</u>, 174 Ill. 2d 281, 286, 673 N.E.2d 290, 293 (1996).  Therefore, if JSM's breach of contract claims were based on some theory of liability other than breach of contract, and were merely labeled as breach of contract claims in order to gain the benefit of a longer limitation period, the breach of contract claims would not be "actions on a written contract" subject to the ten-year limitation period provided by 735 ILCS 5/13–206.  <u>See</u> <u>id.</u> at 290–91.

Here, JSM's breach of contract claims do in fact seek damages for the alleged breach of a written contract.  <u>See</u> <u>id.</u> at 291 ("[W]here liability emanates from a breach of a contractual obligation . . . the action may be fairly characterized as an action on a written contract. . . . As long as the gravamen of the complaint rests on the nonperformance of a contractual obligation, section 13–206 applies.") (internal quotation marks omitted); Complaint (d/e 57), at ¶¶ 34–38, 45–49.

The Carriers argue that the breach of contract claims are "duplicative" of JSM's statutory claims and "redundant," and that, by asserting them, JSM is attempting to avoid liability by the

"artful pleading" that <u>Armstrong v. Guigler</u> warns against.  True, JSM's claims are redundant in that they arise from the same allegedly wrongful acts—the misclassifications of certain employees.  To the extent that JSM seeks to recover damages for a given misclassification on the basis that the misclassification constituted a breach of contract and also seeks to recover damages because the same misclassification constituted a statutory violation, such a double recovery is not permitted.  <u>See</u> <u>Thornton v. Garcini</u>, 237 Ill. 2d 100, 111, 928 N.E.2d 804, 811 (2010).  It does not follow that JSM is forbidden from pleading in the alternative. <u>See</u> Fed. R. Civ. P. 8(a)(3); <u>Guinn v. Hoskins Chevrolet</u>, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005); <u>Cromeens, Holloman, Sibert, Inc v. AB Volvo</u>, 349 F.3d 376, 397 (7th Cir. 2003).

Because the theory of liability underlying JSM's breach of contract claims involves the breach of a written contract, the applicable statute of limitations is ten years.  735 ILCS 5/13–206.

### (3)  The Timeliness of Some of JSM's Claims Depends on the Application of the Discovery Rule, Which Depends on a Disputed Issue of Material Fact.

The parties agree that, if no contractual limitation period exists, the statute of limitations applicable to JSM's statutory claims is the five-year "catch-all" period provided by 735 ILCS 5/13–205.  See FCCI Response (d/e 132), at 9; JSM Motion (d/e 130), at 6.  JSM filed its initial Complaint in Illinois state court on May 2, 2018.  Thus, any statutory claims that accrued on or after May 2, 2013 are timely, while any statutory claims for which the limitation period began to run before May 2, 2013 are untimely.

JSM contends that its statutory claims accrued on the date when JSM discovered the alleged NCCI misclassifications— sometime in the Spring of 2016—because of the operation of the "discovery rule."  The Carriers disagree, and FCCI argues that JSM's claims actually accrued on the dates when the allegedly incorrect NCCI classification codes were used to calculate final premiums for the Policies giving rise to each cause of action.  See FCCI MSJ (d/e 133), at 11. Under FCCI's theory, JSM's only timely statutory claims are those arising from misclassifications relating

to the 2012–2013, 2013–2014, and 2014–2015 BrickStreet policies.

The timeliness of the other four statutory claims depends on the applicability of the discovery rule, an Illinois common law doctrine that delays the running of the limitation period until a claimant "knew or reasonably should have known of the injury and that the injury was wrongfully caused." <u>Am. Family Mut. Ins. Co. v. Krop</u>, 2018 IL 122556, ¶ 21, 120 N.E.3d 982, 988, reh'g denied (Nov. 26, 2018).  Here, undisputedly, JSM first discovered the alleged misclassifications at some point in the Spring of 2016, and no later than May 18, 2016.  Neither of the Carriers has argued that JSM should have discovered the alleged misclassifications earlier.

The Carriers[2] contend that the discovery rule cannot apply because the "lone legal doctrine" available to extend the limitation period "[w]hen a putative plaintiff already knows it has been injured" is that of "equitable tolling."  FCCI additionally argues that

---

[2] BrickStreet's Response to JSM's summary judgment motion incorporates the "legal arguments . . . contained in FCCI's Response to JSM's Motion pertaining to the Common Affirmative Defenses shared by BrickStreet and FCCI, including . . . Limitations Periods . . . ." BrickStreet Response (d/e 134), at 7–8 (internal quotation marks omitted).  The Court therefore attributes the tolling argument contained in FCCI's Response to BrickStreet as well as to FCCI.

the discovery rule cannot apply in cases where the injury is discovered "after the claim arose, but before the applicable statute of limitations has run."

However, the case relied on in FCCI's briefs— Cada v. Baxter Healthcare Corp., 920 F.2d 446, 449 (7th Cir. 1990)—concerns a federal question and applies federal common law doctrines. Here, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and therefore must apply the substantive law of Illinois. See F.D.I.C. v. Wabick, 335 F.3d 620, 624 (7th Cir. 2003). Insofar as the federal discovery rule is similar enough to the Illinois discovery rule that the same principles apply here, Cada still does not support the Carriers' theory. The Carriers confuse the discovery rule—which delays the accrual of a Plaintiff's cause of action and thus the date on which a limitation period begins to run—with tolling doctrines that arrest or extend a limitation period after a claim has already accrued. See FCCI Response (d/e 132), at 10–11; FCCI MSJ (d/e 133), at 12. True, the discovery rule does not apply when discovery occurs "after the claim arose, but before the applicable statute of limitations has run"—because discovery, by definition, occurs when a claim accrues, and not afterwards.

Furthermore, the idea that the discovery rule cannot benefit a plaintiff who discovered his injury after it occurred but before the statute of limitations would have expired if it had begun to run at the time of injury is simply the "reasonable time rule," which the Illinois Supreme Court has rejected. See Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72 (1995) (holding discovery rule to be "not so much . . . an extension of period of time to file, but rather . . . a rule which determines when the statute should begin to run.").

While FCCI has not shown that either of the Carriers is entitled to summary judgment with respect to JSM's pre-2012 statutory claims, neither is JSM entitled to judgment as a matter of law on the Defendants' statute of limitations defense.  When a party "should have had the requisite knowledge under the discovery rule to maintain a cause of action" is "ordinarily a question of fact" which should be determined at the summary judgment stage only if "the facts are undisputed and only one answer is reasonable."  Am. Family Mut. Ins. Co. v. Krop, 2018 IL 122556, ¶ 21, 120 N.E.3d 982, 988, reh'g denied (Nov. 26, 2018) (citing Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill.2d

240, 250, 198 Ill.Dec. 786, 633 N.E.2d 627 (1994)).  Here, whether JSM should have known of its alleged injury before 2016, when Deanna Kuester—then JSM's director of accounting—was informed of the alleged misclassifications by JSM's new insurance broker, is disputed.  See Amended Compl. (d/e 34), at 2–3.  As FCCI states in its cross-motion for summary judgment, another former JSM director of accounting—Donna Lawson—has testified that she handled a dispute with a previous insurer over allegedly incorrectly assigned NCCI classification codes in 2007 or 2008.  See FCCI MSJ (d/e 33), at 12 n.4; Lawson deposition (d/e 33–4), at 10–12. Furthermore, under Illinois law insurance customers "should know the specifics of their policy as soon as they purchase it," and have an "obligation to read their policies."  Krop, 2018 IL 122556 at ¶¶ 22, 29.  FCCI has also stated that JSM's knowledge of the alleged misclassifications "occurred on (or before) May 18, 2016."  See Response (d/e 132), at 9.  Therefore, a disputed issue of fact exists regarding when JSM should reasonably have known of the alleged misclassifications.

    In summation: a ten-year limitation period applies to JSM's breach of contract claims, which are all timely; JSM's statutory

claims arising from the 2012–2013, 2013–2014, and 2014–2015 Policies are timely; the timeliness of JSM's pre-2013 statutory claims depends on the as-yet unresolved factual question of when JSM should have known that the injury giving rise to each claim had occurred.

**B.  The Carriers Have Not Sufficiently Alleged the Elements of Waiver, Estoppel, Laches, or Ratification.**

Waiver, estoppel, laches, and ratification are all affirmative defenses, and the Carriers therefore bear the burden of alleging and proving each essential element of each defense.  They have not done so; in fact, none of the defendants' filings mention what the essential elements of the listed defenses are, or what specific facts support the application of each individual defense in this case.

With respect to waiver, the Carriers had "the burden of proving a clear, unequivocal, and decisive act of [their] opponent manifesting an intention to waive its rights."  In re Nitz, 317 Ill. App. 3d 119, 130, 739 N.E.2d 93, 103 (2000).  The Carriers have not identified any specific act that might constitute waiver, and summary judgment for JSM on the issue of waiver is therefore appropriate.

With respect to estoppel, the Carriers had the burden of alleging and proving six elements, the first of which is that JSM misrepresented or concealed material facts.  See Maniez v. Citibank, F.S.B., 404 Ill. App. 3d 941, 949, 937 N.E.2d 237, 245 (2010).  The Carriers have yet to assert which material facts JSM concealed, or when they did so. Summary judgment for JSM on the issue of estoppel is therefore appropriate.

The defense of laches "requires a showing that (1) a party has exhibited an unreasonable delay in asserting a claim; and (2) the opposing party has suffered prejudice as a result of the delay." In re Estate of Beckhart, 371 Ill. App. 3d 1165, 1171, 864 N.E.2d 1002, 1007 (2007).  The Carriers have claimed, in their statute of limitations arguments, that the roughly eighteen-month delay between JSM's discovery of the misclassifications and the filing of this lawsuit was unreasonable.  However, they have not alleged any specific facts indicating that they have suffered any prejudice as a result of this delay.  JSM is entitled to summary judgment on the laches defense.

The defense of ratification requires the asserting party to show that the ratifying party had "full knowledge" of all relevant

facts at the time of ratification.  <u>Monco v. Janus</u>, 222 Ill. App. 3d 280, 295, 583 N.E.2d 575, 584 (1991) Here, the Carriers have not alleged that JSM knew about the alleged misclassifications at the time of their ratification of any of the policies; the most recent Policy was in effect from 2014 to 2015, and the Carriers have agreed that JSM learned of the alleged misclassifications in 2016. Summary judgment for JSM is therefore appropriate on the affirmative defense of ratification.

## C. Since JSM Is Not Challenging an Administrative Action, JSM Was Not Required to Exhaust its Administrative Remedies Before Filing Suit

The doctrine of exhaustion of administrative remedies applies to parties "aggrieved by administrative action," and mandates that such parties "pursue all available administrative remedies before resorting to the courts." <u>Poindexter v. State, ex rel. Dep't of Human Servs.</u>, 229 Ill. 2d 194, 207, 890 N.E.2d 410, 419 (2008).  JSM is not aggrieved by the NCCI classification system itself; rather, JSM's grievance is with the alleged misclassification of its employees by the named private defendants. The Carriers state that NCCI provides a Dispute Resolution Process through which classification issues can be addressed, but

the Carriers do not cite any case in which a court applying Illinois law has applied the exhaustion doctrine to a dispute between two private parties that merely involves an available administrative remedy. The case cited for the proposition that the doctrine applies "whenever an agency has exclusive jurisdiction over an action" actually states that "[t]he doctrine applies <u>only</u> when an agency has exclusive jurisdiction over an action." <u>Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.</u>, 348 Ill. App. 3d 929, 935, 810 N.E.2d 658, 665 (2004) (emphasis added); <u>see</u> FCCI Response (d/e 132), at 12.

In past cases where a plaintiff has sued under 215 ILCS 5/462b alleging misclassification of its employees by a workers' compensation insurance carrier, Illinois and federal courts have not required the Plaintiff to exhaust available administrative remedies before bringing a civil claim. <u>See</u> <u>W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.</u>, 794 F.3d 666 (7th Cir. 2015); <u>Cas. Ins. Co. v. Hill Mech. Grp.</u>, 323 Ill. App. 3d 1028, 1037, 753 N.E.2d 370, 377 (2001). <u>CAT Express, Inc. v. Muriel</u> concerns a plaintiff that chose to exhaust its administrative remedies before resorting to the court system, but the court in that case did not

hold that such exhaustion was mandatory.  Indeed, the
involvement of NCCI and the Illinois Department of Insurance in
CAT Express consisted entirely of telling the plaintiff that it should
have filed a lawsuit instead of bothering the agencies with a
dispute over which they had no jurisdiction because it "require[d]
an interpretation of the state or federal law."  2019 IL App (1st)
181851, ¶¶ 4–7, 148 N.E.3d 726, 729.  Because JSM's suit
concerns the actions of private defendants, rather than
administrative agencies, JSM was not required to exhaust its
administrative remedies before filing suit.

## VI. CONCLUSION

For the reasons stated, JSM's motion for summary judgment
(d/e 130) is GRANTED IN PART, in that summary judgment is
entered in favor of JSM on the Carriers' third and fourth
affirmative defenses and on the Carriers' second affirmative
defense with respect to its claims arising out of the 2012–2013,
2013–2014, and 2014–2015 Policies, and DENIED IN PART.
FCCI's summary judgment motion (d/e 133) is DENIED.

**ENTERED: December 21, 2020**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**