E-FILED
Thursday, 09 September, 2021  02:17:44 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| **JSM MANAGEMENT, INC.,** ) | |
| An Illinois corporation, ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| v. ) | **No. 18-cv-2154** |
| ) | |
| **BRICKSTREET MUTUAL** ) | |
| **INSURANCE COMPANY, a Mutual** ) | |
| **Company,** ) | |
| ) | |
| **Defendant/Counter-Plaintiff,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MONROE GUARANTY** ) | |
| **INSURANCE COMPANY, a member** ) | |
| **Of the FCCI INSURANCE GROUP,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Amended Motion for

Summary Judgment (d/e 146) filed by Counter-Defendant JSM

Management, Inc. (JSM) in response to the Counterclaim (d/e 108)

filed by Counter-Plaintiff BrickStreet Mutual Insurance Company

(BrickStreet).  For the reasons stated below, JSM's Motion for
Summary Judgment (d/e 146) is GRANTED.

## I. BACKGROUND

The lawsuit underlying the instant Counterclaim arose from a
dispute between JSM, a property management company based in
Champaign, Illinois, and the insurance carriers from which JSM
purchased workers' compensation insurance between 2008 and
2016.  JSM filed its Complaint in Illinois state court on May 2, 2018,
claiming that the insurance carriers had overcharged JSM for
insurance coverage between 2008 and 2015.  See d/e 1, exh. A.  The
case was removed to federal court on June 1, 2018.  See d/e 1.

On September 20, 2019, BrickStreet filed the instant
Counterclaim (d/e 108) asserting that JSM had breached the terms
of the 2015-2016 insurance policy (the "Policy") JSM had purchased
from BrickStreet by refusing to pay the full amount due as a "final
premium."  See d/e 108.  JSM moved to dismiss the Counterclaim
pursuant to Fed. R. Civ. P. 12(b)(6), arguing that it had already paid
a final premium on the Policy in 2016 and that Illinois law and the
terms of the Policy prohibited BrickStreet from retroactively
assessing a revised final premium.  On December 21, 2020, the

Court denied JSM's motion to dismiss, reasoning that BrickStreet's upwardly revised final premium would have been permissible if, as BrickStreet alleged, JSM had caused BrickStreet to mistakenly assess an unreasonably low final premium in 2016 by concealing information from BrickStreet or knowingly submitting false information to BrickStreet.

JSM filed the instant Motion for Summary Judgment (d/e 146) on February 16, 2021.  JSM argues that the undisputed facts in this case show that JSM did not conceal information or submit false information to BrickStreet and that JSM is consequently entitled to summary judgment.  BrickStreet filed a Response (d/e 147) on March 9, 2021, arguing that Illinois law did not prohibit BrickStreet from issuing a revised final premium regardless of whether JSM concealed or misrepresented information.  JSM filed a Reply (d/e 148) to BrickStreet's Response on March 22, 2021.

## II. FACTS

As an initial matter, the Court notes that BrickStreet's Response does not comply with the requirements set forth in Local Rule 7.1(D)(2)(b) for responding to the facts asserted by JSM and asserting BrickStreet's own additional facts in separate subsections.

Rather, BrickStreet's response to JSM's statement of facts includes multiple argumentative paragraphs in which BrickStreet ambiguously and/or partially denies the truth of JSM's asserted facts and then sets forth BrickStreet's own facts. See d/e 147, ¶¶ 3, 6–7, 9, 10, 14, 17. Additionally, some of the additional facts asserted in BrickStreet's Response are insufficiently supported by references to the record. See id., ¶ 9 (asserting that JSM removed certain words from a document submitted to BrickStreet but citing an e-mail actually discussing removal of the specified words from a document submitted to a carrier other than BrickStreet for an audit of a separate general liability insurance policy). Accordingly, the Court deems admitted all facts asserted by JSM which BrickStreet has not specifically and adequately denied. See Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 644 (7th Cir. 2008) (affirming district court's refusal to consider plaintiff's response to defendant's statement of facts where response "contained several extremely long, argumentative paragraphs" in which plaintiff "simultaneously denied the veracity of [defendant's] proposed material facts and presented additional facts of his own").

The following facts are taken from the parties' statements of undisputed material facts and from the evidence submitted.

BrickStreet began providing workers' compensation insurance coverage to JSM in 2011. JSM purchased five insurance policies from BrickStreet, each of which provided coverage for a period of one year beginning on August 30 and ending on August 30 of the subsequent year. JSM paid an "estimated premium" in installments at the beginning of each policy period. D/e 146, ¶ 3. After the end of each policy period, BrickStreet performed an audit of JSM's payroll records for the expired policy period and "used those actual payroll amounts to calculate the actual final premium." Id., ¶ 4. If the final premium for a policy period was higher than the estimated premium, JSM was obligated under the terms of each policy to pay BrickStreet the difference between the actual and the estimated premium. If the final premium was less than the estimated premium, BrickStreet was obligated to refund JSM the difference between the premiums.

JSM's premiums were calculated using the National Council on Compensation Insurance (NCCI) classification system. Under this system, each employee of a company is assigned one or more

four-digit classification codes according to the type of work that the
employee does.  Each NCCI classification code is associated with a
rate reflecting the cost of workers' compensation insurance per
$100 of payroll.  Higher-risk codes carry higher rates.  For example,
code 5645 applies to carpenters working on the construction of
residential dwellings not exceeding three stories in height.  This
kind of construction work carries a relatively high risk of workplace
injury, so code 5645 carried a rate of 27.4 during the 2015-2016
policy period, meaning that for every $100 paid to code 5645
employees an employer would pay $27.40 in premiums.  See
d/e 108, exh. 1, p. 2.  Code 9012, on the other hand, applies to
property management leasing agents and clerical workers and
carried a rate of 1.51 in 2015-2016, meaning that insuring a 9012
employee during that time period was much less expensive than
insuring a 5645 employee who earned similar wages.  See id.

On August 19, 2015, BrickStreet issued the Policy to JSM.
Id., p. 1.  The Policy period was August 30, 2015 to August 30,
2016.  Id.  Attached to the Policy was an estimated premium
calculation that included a list of NCCI classification codes along
with an estimate of the amount of payroll anticipated under each

code.  Id., p. 2.  The Policy estimated that JSM's payroll would include: (1) $360,000 paid to employees classified under NCCI classification code 5606, which covers project managers working in construction; (2) $400,000 under code 5645, which covers carpenters working on the construction of residential dwellings three or fewer stories in height; (3) $1,240,000 under code 9012, which covers property management company employees who are property managers, leasing agents, salespeople, or clerical workers; and (4) $1,340,000 under code 9015, which covers "all other employees" of a property management company.  Id.  The estimated exposure amounts and the rate associated with each classification code were used to calculate an estimated annual premium of $129,871.00.  Id.  After applicable surcharges and discounts, the total amount due on the Policy was $131,183.00.  Id.  JSM paid this total amount to BrickStreet in several installments.

In May 2016, JSM engaged new insurance agents from the InsureChampaign insurance agency.  D/e 146, ¶ 8.  One of the new agents, Graham Tennant, reviewed JSM's workers' compensation insurance records and then told Kuester that he thought that the NCCI codes currently assigned to some of JSM's employees were

incorrect and that JSM was overpaying for workers' compensation insurance.  Id., ¶ 9.  Tennant requested that the NCCI perform an inspection to determine the correct codes.  D/e 147, ¶ 9.  On October 6, 2016, NCCI employee Genevieve Jobst performed an on-site inspection of JSM's operations.  D/e 147, exh. B, p. 10.  Jobst's inspection consisted of an approximately one-hour long conversation with JSM's Director of Accounting, Deanna Kuester, and JSM's General Manager, Scott Kunkel.  Id.  On October 19, Jobst sent an "Inspection & Classification Report" to JSM.  See d/e 146, pp. 24–29.  The Report classified all of JSM's employees under codes 9012 and 9015, and none under the construction-related codes 5606 or 5645.  Id.  According to the Report, code 9015 applies "to the care, custody, and maintenance of premises or facilities" and "encompasses all superintendents, custodial and maintenance operations," while code 9012 "is applied to the leasing agents as well as the clerical employees who work in an office in support of the property management services." Id., p. 28.

During every year in which JSM purchased workers' compensation insurance from BrickStreet, JSM maintained a workers' compensation payroll summary spreadsheet that listed

JSM employees by name and also included each named employee's
job title, a brief description of the employee's duties, and the NCCI
classification code assigned to the worker.  D/e 147, ¶ 7.  Every
year, JSM sent this document along with other payroll documents
to BrickStreet for BrickStreet to use during the annual premium
audit.  Id.  One of these other documents was an "Income
Statement"[1] that in past years had included the words "Carpentry"
and "Painting" to describe the work done by some JSM employees.
See d/e 148, pp. 6–7.

    In fall 2016, Kuester changed several of the NCCI classification
codes listed in JSM's payroll summary spreadsheet.  Specifically,
Kuester assigned each of the employees who had previously been
classified under code 5651[2] or code 5606 on the spreadsheet to

---

[1] The e-mail relied on by BrickStreet to show that JSM removed the words "Carpenter" and
"Painter" from the Income Statement before sending it to BrickStreet's auditor actually
discusses removing the words from an Income Statement that JSM planned to send to a
third-party insurance carrier that was performing an audit of JSM's general liability policy.
See d/e 147, exh. A, pp. 8–9, 14.  However, because both parties agree and assume that JSM
also sent the altered Income Statement to BrickStreet, the Court deems that fact admitted.  See
d/e 147, ¶ 9; d/e 148, pp. 6–7.

[2] NCCI classification code 5651, which bore the description "Carpentry—dwellings—three
stories or less" was assigned to some JSM employees during the 2011-2012 and 2012-2013
policy periods.  At some point, however, the NCCI replaced code 5651 with code 5645,
described as "Carpentry—Construction of Residential Dwellings Not Exceeding Three Stories in
Height."  See d/e 146, p. 15 n.4.  For the 2013-2014 and 2014-2015 policy periods, JSM's
premiums were calculated using 5645 instead of 5651.  See id.  However, JSM's payroll
summary spreadsheet was never updated to replace 5651 with 5645.  See id.  Therefore, when
Kuester replaced the construction-related codes from JSM's payroll summary spreadsheet she
removed code 5651 rather than code 5645, even though the estimated premium on the Policy
and the final premiums from the two previous policy periods had used code 5645.

either code 9015 or code 9012.  D/e 146, ¶ 15.  On October 10, 2016, Tennant sent Kuester an e-mail advising her to remove the words "Carpentry" and "Painting" from the Income Statement before sending it to JSM's General Liability Insurer, Cincinnati Insurance, because those terms would "confuse the auditor" and because "[p]er NCCI, these are all maintenance people."  See d/e 147, exh. A, pp. 8–9, 14.  Kuester removed the words from the Income Statement.

In November 2016, BrickStreet conducted its annual audit. While prior audits had been conducted "on-site," the 2015-2016 audit was conducted via e-mail at BrickStreet's request.  D/e 146, ¶ 12.  On November 10, 2016, a BrickStreet auditor e-mailed Kuester to request documents and information for the premium audit including the payroll summary spreadsheet, a "[s]ummary of new construction completed during the [2015-2016] policy period," and "[d]etail regarding project managers (who they are, who they supervise, daily activities, amount of time directly supervising and/or doing construction work)."  D/e 146, pp. 123–24.  Kuester sent the auditor the payroll summary spreadsheet in which all of JSM's payroll was classified under either 9012 or 9015 and truthfully stated that JSM had not completed any new construction

during the 2015–2016 policy period.  Id.; see d/e 147, ¶ 14.

Kuester also stated that "JSM does not consider any employees [sic]

to be a project manager."  D/e 146, p. 124.

On November 15, 2016, a BrickStreet "Senior Premium

Auditor" named Michael Woolwine sent an e-mail to a BrickStreet

employee named Christopher Walz noting that JSM had "placed all

the maintenance employees in class code 9015" despite the fact

that a prior audit had classified several JSM employees under 5645

and 5606.  Id., p. 129.  Woolwine noted that one JSM maintenance

employee had "replac[ed] an old window with a new window" during

the policy period and asked Walz whether he should move the

employees who had been classified under 5645 in previous years

back into 5645.  Id.  Walz recommended "reaching out to the

insured to determine if they had any new construction projects" and

stated that "[i]f the new construction was limited to replacing

windows, I would consider this to be maintenance.  However, if they

built and/or did any complete remodeling jobs, then I would use

5645." Id.

On November 28, 2016, BrickStreet completed its premium

audit and sent JSM an Audit Statement summarizing the results.

D/e 146, p. 126.  In the cover letter included along with the Audit Statement BrickStreet stated that the initial premium previously paid by JSM was "an estimate calculated using the job classifications and estimated payroll information you or your agent provided to us" but that the post-audit premium was "based on actual wages paid and job classifications in effect during the policy period."  D/e 132-29, p. 23.  According to the 2016 audit statement, the estimated payroll for the construction-related codes 5606 and 5645 had been listed at $360,000.00 and $400,000.00, respectively, in the Policy, but the "Actual Payroll" for both 5606 and 5645 was $0.00.  D/e 146, p. 126.  Furthermore, the estimated payroll for the non-construction property management codes 9012 and 9015 had been listed as $1,240,000.00 and $1,340,000.00, respectively, in the Policy, but the 2016 audit statement listed the "Actual Payroll" for 9012 as $1,572,368.00 and the "Actual Payroll" for 9015 as $1,933,015.00.  Id.  The 2016 audit statement assessed an audited premium of $76,567.00, $54,616.00 less than the estimated premium that JSM had paid to BrickStreet during the policy period.  Id.  In late 2016, BrickStreet issued a premium refund to JSM in the amount of $54,616.00.  D/e 147, ¶ 17.

On May 2, 2018, JSM filed suit against BrickStreet, JSM's other former insurance carriers, and JSM's previous insurance broker, alleging that codes 5606 and 5645 should never have been applied and that JSM had been wrongfully overcharged for insurance coverage between 2008 and 2015.  On August 27, 2019, BrickStreet issued an additional audit statement that assessed a revised final premium for the Policy in the amount of $344,236.00. See d/e 108 exh. 2, p. 1.  BrickStreet claims that this 2019 audit statement was the result of a second audit conducted by BrickStreet after BrickStreet acquired new information through discovery conducted in JSM's lawsuit against BrickStreet.  See d/e 108, ¶ 17.  The 2019 audit statement differed from the 2016 audit statement in that the $1,933,015.00 in payroll that the 2016 statement had assigned to classification code 9015 was assigned to code 5645 instead in the 2019 statement.  D/e 108, exh. 2, p. 1. This change resulted in a total revised premium of $344,236.00.  Id. The revised premium amount was $213,053.00 greater than the estimated premium paid by JSM in 2015 and 2016, see d/e 108, exh. 1, p. 2, and $267,669.00 greater than the first final premium paid by JSM after BrickStreet's initial audit in November 2016.  See

d/e 108, ¶ 27.  JSM refused to pay the additional $267,669.00 that BrickStreet claimed was due under the Policy, and BrickStreet filed the instant Counterclaim alleging breach of contract.  See id.

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc., 986 F.3d 711, 718 (7th Cir. 2021).  When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  King v. Hendricks Cty. Commissioners, 954 F.3d 981, 984 (7th Cir. 2020).

# IV. ANALYSIS

JSM argues that summary judgment is appropriate unless BrickStreet can demonstrate that a material issue of fact exists with respect to whether JSM concealed information from or knowingly submitted false information to BrickStreet. BrickStreet argues that summary judgment is inappropriate even if JSM did not conceal information because there is a material factual dispute as to whether the class codes assigned in BrickStreet's 2019 audit statement are correct.

The question of which set of classification codes correctly describe JSM's 2015-2016 payroll is both disputed and factual. In deciding JSM's summary judgment motion, therefore, the Court assumes that the codes BrickStreet applied after the 2019 audit were correct and that the codes suggested by JSM and applied by BrickStreet during the 2016 audit were incorrect. The classification dispute is not material, however, if JSM is entitled to summary judgment regardless of which set of codes is correct. Because Illinois law prohibited BrickStreet from issuing the revised final premium in 2019, the classification dispute is immaterial and JSM is entitled to summary judgment.

A.   **215 ILCS 5/143.17a Prohibits Insurance Carriers from Raising Premiums After Audit Without Notice, Where the Insured Party Has Not Concealed or Falsified Information.**

JSM argues that a provision of the Illinois Insurance Code codified at 215 ILCS 5/143.17a prohibits insurance carriers from increasing premiums by changing the applicable classification codes after the end of a coverage period.  BrickStreet denies that this interpretation of § 143.17a is correct and suggests that § 143.17a provides notice requirements for renewal of insurance policies and does not prevent the assessment of increased premiums after audit.  In denying JSM's Motion to Dismiss, the Court accepted JSM's interpretation of § 143.17a but ruled in favor of BrickStreet because BrickStreet alleged that JSM caused BrickStreet to initially apply incorrect codes by concealing classification information and submitting false information.  See d/e 142.

In the Court's Opinion (d/e 142) denying JSM's Motion to Dismiss, the Court deferred to the construction of § 143.17a adopted by the Illinois Department of Insurance (IDOI) in Company Bulletin 2013-09 (CB 2013-09).  Now, BrickStreet has brought to the Court's attention a second IDOI Company Bulletin, CB 2018-08,

that removed CB 2013-09 from the IDOI website along with 180 other IDOI Bulletins.

CB 2018-08 states that the IDOI "intends for Company Bulletins to provide timely, relevant, and helpful guidance to insurance companies" and that the IDOI was removing 180 Company Bulletins that no longer provided such guidance from its website.  D/e 147, exh. F.  CB 2018-08 did not give any specific reason for the removal of CB 2013-09.  Id.  The language of § 143.17a has been changed once since 2013, but that change did not affect the subsections relied upon by JSM and by the IDOI in CB 2013-09.[3]  See Illinois Public Act 100-0475 (effective January 1, 2018).  Accordingly, the Court interprets CB 2018-08 as nullifying CB 2013-09 without either endorsing or rejecting CB 2013-09's interpretation of 215 ILCS 5/143.17a.  The Court will, therefore, interpret § 143.17a anew without deferring to the IDOI's 2013 interpretation of the statute.

---

[3] Public Act 100-475 replaced a sentence in in § 143.17a that read "In all notices of intention not to renew any policy of insurance, as defined in Section 143.11, the company shall provide a specific explanation of the reasons for nonrenewal" with language stating "the notice to the named insured shall provide a specific explanation for nonrenewal."  Illinois Public Act 100-0475.  Section 143.17a still provides that "[a] company intending to nonrenew any policy of insurance to which Section 143.11 applies . . . must mail written notice to the named insured at least 60 days prior to the expiration date of the current policy."  Id.

The plain language of § 143.17a prohibits insurance carriers who mistakenly classify an insured company's employees in an initial audit from later increasing the insured's annual premium by more than 30% without notice based on a revision of the initial audit. Subsection 143.17a(a) states that an insurance carrier that intends to nonrenew an insurance policy must give notice to the insured party 60 days prior to the expiration date of the current policy. 215 ILCS 5/143.17a(a). Subsection 143.17a(b) states that an insurance carrier that intends to renew a policy "with an increase in premium of 30% or more or with changes in deductibles or coverage that materially alter the policy" must similarly give notice 60 days prior to the renewal date. 215 ILCS 5/143.17a(b). Subsection 143.17a(c) states that a company that has failed to provide notice of its intention to nonrenew or renew with material changes may not increase the renewal premium by more than 30% from the previous year. 215 ILCS 5/143.17a(c). Taken together, these three subsections establish that an insurance carrier may not increase an insured party's premium by more than 30% without first giving notice. BrickStreet's 2019 revised final premium for the 2015-2016 Policy is $344,236.00, significantly more than 30%

higher than the $124,961.00 premium that JSM paid BrickStreet for JSM's 2014-2015 worker's compensation policy.  See d/e 108, exh. 1, p. 2; d/e 132-22, p. 10.   BrickStreet did not provide notice to JSM of its intention to more than double JSM's premium until more than three years after the renewal date.  Section 143.17a prohibits this kind of retroactive rate adjustment.

This construction of § 143.17a is consistent with the statutory context of § 143.17a within the Illinois Insurance Code.  See Hosey v. City of Joliet, 124 N.E.3d 1075, 1079 (Ill. App. 2019) ("A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole.").  Another provision of the Code, 215 ILCS 5/462b, places the burden of applying correct classifications on insurance companies rather than on insured parties.  See 215 ILCS 5/462b (stating that "[i]nsurance companies shall apply correct classifications . . . to compute premiums" and that if application of incorrect classifications results in an insured party overpaying for a premium, "the insurer shall refund to the insured the excessive premium").  Section 462b does not provide any remedy for when a carrier's application of incorrect classifications results in underpayment by the insured.  Id.

**B.     JSM Did Not Conceal or Falsify Classification Information.**

In denying JSM's Motion to Dismiss, the Court acknowledged that workers' compensation insurance carriers are generally prohibited from retroactively increasing premiums after audit.  See d/e 142, pp. 12–13.  The Court also recognized an exception to the general rule.  See id.  This exception applies when an insured employer causes its insurance carrier to apply incorrect classifications by concealing information or knowingly submitting false information.  See id., p. 13.  BrickStreet alleged in its Counterclaim that JSM "withheld or failed to disclose" pertinent classification information, and at the motion to dismiss stage this allegation was sufficient.  D/e 108, ¶ 17.  Summary judgment, however, "is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  Weaver v. Champion Petfoods USA Inc., 3 F.4th 927, 938 (7th Cir. 2021).  BrickStreet has not introduced evidence showing that JSM caused BrickStreet to apply incorrect classifications by lying or concealing classification information.

BrickStreet points to three alleged misrepresentations by JSM: (1) Kuester's substitution of the 9015 code for the 5645 code on the JSM payroll summary spreadsheet; (2) Kuester's removal of the words "Carpentry" and "Painting" from JSM's Income Statement; and (3) JSM's alleged failure to disclose to the NCCI Inspector, Genevieve Jobst, that some of the employees JSM placed in 9015 were "carpenters" whose job duties included replacing windows and repairing roofs.

However, the undisputed evidence shows that BrickStreet was not deceived by these actions. BrickStreet's auditors became aware of the classification code changes made by JSM during the November 2016 audit. See d/e 146, p. 129. A BrickStreet auditor considered switching the JSM "carpenters" back to code 5645 during the 2016 audit process, but BrickStreet elected not to do so. See id. BrickStreet's auditors were aware that at least one of the reclassified employees had performed carpentry work such as replacing windows during the policy period. See id. Nevertheless, BrickStreet agreed with the classification codes suggested by JSM after the conclusion of a full audit and assessed a post-audit premium "based on actual wages paid and job classifications in

effect" of $76,567.00.  <u>See</u> d/e 133-29, pp. 23–24.  BrickStreet has

not offered any explanation for how JSM's decision to change the

rating codes or descriptions in its documents could have deceived

BrickStreet, given that BrickStreet was aware of the suggested

classification changes and the basis therefor.  In the absence of

fraudulent behavior by the insured party, Illinois law places the

burden of determining the correct classification codes on the

insurance carrier and does not permit carriers to remedy an initial

misclassification by retroactively increasing a former client's

premiums without notice.

**C.     The Undisputed Facts Show That Not All of the JSM Employees Formerly Classified Under NCCI Code 9015 Employees Belonged in Code 5645 in 2016.**

BrickStreet also claims that "while Plaintiff changed it [sic]

designation of Class Codes to be applied to employees for the

2015/2016 audit, the employees' actual job duties did not change,

and in fact still included work duties that are correctly classified as

'Carpenter' and assigned Class Code 5615 [sic]."  <u>Id.</u>, p. 15.  The

admission that "employees' actual job duties did not change" is fatal

to BrickStreet's Counterclaim because the 2019 revised final

premium includes $0 in payroll under code 9015 and

$1,933,015.00 in payroll under code 5645 despite the fact that each of the four previous final premiums paid by JSM included between $475,000 and $925,000 in 9015 payroll and not more than $310,000 in 5645 payroll.  See d/e 132-22, pp. 7–11.  To survive summary judgment, BrickStreet must produce evidence that could persuade a trier of fact not only that the employees who were reclassified from 5645 to 9015 in 2016 should have remained in 5645 but also that all of the other JSM employees who were classified under 9015 in previous years should have been classified under 5645 during the 2015-2016 policy period.  BrickStreet has not produced any evidence to contradict JSM's assertion that at least some of the employees classified under code 9015 in previous years did not belong in 5645 in 2015-2016.

## VI. CONCLUSION

For the reasons stated, Counter-Defendant JSM Management's Motion for Summary Judgment on BrickStreet's Counterclaim (d/e 146) is GRANTED.

**ENTERED: September 8, 2021**

**FOR THE COURT:**

*s/Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**